IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**GRACE LEE,**

    **Plaintiff,**

    **v.**

**HEATHER REED, in her official and individual capacities, DR. PAT BOSCO, in his official and individual capacities, and KANSAS STATE UNIVERSITY,**

    **Defendants.**

Case No. 2:16-cv-02089-JAR-TJJ

## MEMORANDUM AND ORDER

Plaintiff Grace Lee filed this action *pro se* against Ms. Heather Reed, Associate Dean and Director of Student Life and Director of the Critical Incident Response Team ("CIRT") at Kansas State University ("KSU"), Dr. Pat Bosco, Vice President for Student Life at KSU, unnamed defendants John Does I–X of KSU, and KSU. Plaintiff's complaint alleges civil rights violations under 42 U.S.C. § 1983 and state law tort claims associated with her dismissal from KSU's Graduate Program for Statistics. This matter is before the Court on Defendants Reed, Bosco, and KSU's Motion to Dismiss all remaining claims and defendants (Doc. 15). On July 15, 2016, this Court dismissed John Does I–X as parties to this lawsuit.[1] The motion to dismiss the remaining defendants is fully briefed, and the Court is prepared to rule. As described more fully below, the Court grants Defendants' Motion to Dismiss.

---

[1] Doc. 24.

**I.      Factual Allegations**

The Court adopts the following factual allegations for the purposes of this motion to dismiss. Additionally, the Court construes the following facts in the light most favorable to Plaintiff.

Plaintiff filed her complaint on February 8, 2016.[2] This is Plaintiff's second lawsuit arising out of events surrounding her dismissal from KSU. Plaintiff filed her first lawsuit surrounding her dismissal on September 28, 2012.[3]

Plaintiff, currently a resident of Massachusetts, was a graduate student in the Department of Statistics at KSU. She was dismissed from the Department of Statistics, and subsequently from the KSU Graduate School, in May 2012.

On May 9, 2012, Plaintiff received a letter informing her that she had been recommended for termination from the Department of Statistics for failure to find a replacement professor to serve as her major professor. On May 31, 2012, Plaintiff received a letter informing her that, on the recommendation of the Department of Statistics, she was being dismissed from KSU Graduate School for failure to make satisfactory progress.

Prior to Plaintiff's dismissal, Dr. James W. Neill, Head of the Department of Statistics at KSU, wrote to faculty members in the Department concerning an incident at the Graduate School involving Plaintiff that occurred on May 2, 2012. In the May 3, 2012 email, Dr. Neill stated: "[Reed is] concerned for [Lee's] potential to be self-destructive. [Reed] also indicated that such behavior has the potential to extend to others."[4] Plaintiff received a copy of this email on December 20, 2013 as part of discovery in her prior lawsuit. In her response to summary

---

[2] Doc.1.
[3] *Lee v. Kansas State Univ.*, No. 12-CV-2638-JAR, 2013 WL 2476702, at * 1 (D. Kan. June 7, 2013).
[4] Doc. 1-6.

judgment in the previous case, Plaintiff stated she "first learned of KSU's officials' accusations against [her] regarding [her] behavior issues through the discovery of [the] suit on Dec. 23, 2013."[5] Following the alleged May 2, 2012 incident, a CIRT meeting was held on May 4, 2012 to discuss Plaintiff's conduct.

Also, on May 4, 2012, Defendant Reed sent an email requesting a meeting with Plaintiff. In the email, Defendant Reed told Plaintiff she wanted to talk to her "about reports [she] received concerning interactions [Plaintiff] had with [her] department in the Graduate School."[6] This meeting between Plaintiff, Defendant Reed, and Dr. James A. Guikema, the Graduate School Associate, occurred on May 7, 2012. During the meeting, in addition to discussions about recommending Plaintiff be dismissed from the graduate program because she lacked linkage with a major professor, Defendant Reed told Plaintiff about reports of her becoming upset at the Graduate School, but did not specifically mention this constituted misconduct.[7]

In both this and her previous lawsuit, Plaintiff denied being in the Graduate School on May 2, 2012. This Court's grant of summary judgment concluded KSU dismissed Plaintiff for failure to make satisfactory academic progress, not because of the alleged May 2, 2012 incident, and the subsequent CIRT investigation that was terminated on May 4, 2012, with a finding of no disciplinary action being warranted.[8]

During Plaintiff's previous lawsuit, Defendant Reed filed a declaration to the District Court of Kansas on February 6, 2015 that stated: "On May 2, 2012, there was an incident in

---

[5]Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at ¶ 72, *Lee v. Shanklin*, (D. Kan. July 23, 2015) (No. 12-CV-2638-JAR-TJJ), 2015 WL 4496266.

[6]Doc. 1-7.

[7]Doc.1-8.

[8]*Lee v. Shanklin*, No. 12-cv-2638-JAR, 2015 WL 4496266, at *12–13 (D. Kan. July 23, 2015).

3

which Grace Lee was reported to be yelling and disruptive in the Graduate School office."[9] As a *pro se* litigant, Plaintiff received legally required notice of this declaration through the Court's electronic filing system on February 6, 2015.

Plaintiff wrote to Defendant Reed on March 24, 2015 asking for a copy of the report from the alleged May 2, 2012 incident. Plaintiff also sent this request to Defendant Dr. Pat Bosco, Vice President of Student Life at KSU. These requests went unanswered. On April 12, 2015 Plaintiff again wrote Defendant Bosco requesting documents relating to the alleged incident. Around May 9, 2015, Plaintiff received the requested information in the form of a one-page CIRT file dated May 4, 2012. The "Incident" section of the CIRT file contains the statement: "Grace Lee, PhD student in Statistics, concerning disruptive behavior at the Graduate School."[10]

In Plaintiff's previous suit, this Court granted a motion to dismiss in favor of dismissing nine claims against KSU and individual defendants in their official capacities on June 7, 2013.[11] This Court subsequently granted a following motion to dismiss against all but two remaining defendants on August 20, 2014.[12] This Court then granted summary judgment in favor of the remaining defendants on July 23, 2015.[13]

**II.     Discussion**

Plaintiff alleges three counts in her complaint. In Count I, Plaintiff alleges that Defendants, in their individual and official capacities, violated her due process rights, in violation of 42 U.S.C. § 1983. Plaintiff argues Defendants' statements and accusations of misconduct have damaged her liberty interest in her good name and reputation throughout the

---

[9] Doc. 1-12 at ¶ 7.

[10] Doc. 1-17.

[11] *Lee*, 2013 WL 2476702, at *1, 13.

[12] *Lee v. Shanklin*, No. 12-cv-2638-JAR, 2014 WL 4167442, at *1, 10 (D. Kan. Aug. 20, 2014).

[13] *Lee*, 2015 WL 4496266, at *13.

4

community in the course of terminating her from the graduate program, and foreclosed her freedom to take advantage of academic and employment opportunities.

In Count II, Plaintiff alleges Defendants, in their individual and official capacities, defamed her through false and intentional statements regarding misconduct at the KSU Graduate School in violation of Kansas state law.

In Count III, Plaintiff alleges intentional infliction of emotional distress, arguing that she has suffered extreme emotional distress as a result of Defendants' conduct. Plaintiff brings this claim against Defendants in their individual and official capacities.

The Court takes judicial notice of its own documents as per Federal Rule of Evidence 201(b)(2), permitting the court to take notice of facts "not subject to reasonable dispute because it[] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Judicially noticed documents "may only be considered to show their contents, not to prove the truth of matters asserted therein."[14] The court may take judicial notice on its own, and must take judicial notice when requested by a party and the court is provided the necessary information.[15] Because their accuracy cannot reasonably be questioned, the Court takes judicial notice of the documents in Plaintiff's prior case in this Court.[16]

The Court recognizes Plaintiff's status as a *pro se* litigant. However, the Court notes that a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[17]

---

[14]*Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

[15]Fed. R. Evid. 201(c).

[16]*Lee v. Kansas State Univ.*, No. 12-CV-2638-JAR (D. Kan. Sept. 28, 2012).

[17]*Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules)).

### A. Count I—Deprivation of Liberty Interests Under 42 U.S.C. § 1983

#### 1. Statute of Limitations

The statute of limitations for claims brought under 42 U.S.C. § 1983 is governed by the personal injury statutes for the state in which the federal district court sits.[18] While state law provides the statute of limitations period, federal law determines the date on which the claim accrues and the statute begins to run.[19] At issue is the limitations period for Plaintiff's 42 U.S.C. § 1983 deprivation of a liberty interest claim.

All claims brought under § 1983 are uniformly characterized as personal injury torts for statute of limitations purposes.[20] The court is not to try to analogize § 1983 claims to more than one state cause of action.[21] In Kansas, the statute of limitations period for personal injury actions is two years.[22] This limitation applies to Plaintiff's § 1983 claim of deprivation of liberty interest.

Under federal law, § 1983 claims generally rely on the common law tort principle that the claim accrues when the plaintiff "has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."[23] A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.[24] It is not necessary that the

---

[18]*Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (citing *Wilson v. Garcia*, 471 U.S. 251 (1985)).

[19]*Id.* (citing *Wallace v. Kato*, 549 U.S. 384 (2007)).

[20]*Wallace*, 549 U.S. at 387; *Garcia v. Wilson*, 731 F.2d 640, 651 (10th Cir. 1984).

[21]*Garcia*, 731 F.2d at 650.

[22]K.S.A. § 60-513(a)(4).

[23]*Wallace*, 549 U.S. at 388 (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Febar Corp. of Cal.*, 522 U.S. 192, 201 (1997)) (citations omitted).

[24]*Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005).

6

plaintiff know of all the evidence that he ultimately relies on for the statute of limitations to accrue.[25]

Plaintiff's claim of deprivation of a liberty interest accrued on the date she knew, or had reason to know of her alleged injury—the deprivation of her liberty interest in her good name and reputation that occurred in the course of her termination. Plaintiff's termination from KSU's Department of Statistics and Graduate School occurred in May 2012. Plaintiff received her first dismissal letter on May 9, 2012, and received a second dismissal letter on May 31, 2012. Conversations Plaintiff had with Defendant Reed regarding her conduct and dismissal also occurred in May 2012. Therefore, the claim accrued in May 2012. Because there is a two-year statute of limitations under Kansas law, the claim became time-barred in May 2014. Thus, this claim is time-barred.

Even if Plaintiff was unaware, or should not have been aware, of the alleged false statements causing her injury in May 2012, she, at the very least, should have been aware of this information regarding her conduct on December 23, 2013—the date she admitted that she received information regarding her behavior in the discovery process of her previous case filed with this Court.[26] Therefore, at the very latest, this deprivation of a liberty interest claim accrued on December 23, 2015. Plaintiff did not file her complaint until February 8, 2016. Using either accrual date, this is past the two years allowed under the statute of limitations. As such, the Court grants Defendants' motion to dismiss Count I as it is time-barred.

---

[25]*Id.*

[26]Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at ¶ 72, *Lee v. Shanklin*, (D. Kan. July 23, 2015) (No. 12-CV-2638-JAR-TJJ), 2015 WL 4496266 ("In fact, Plaintiff Lee first learned about KSU officials' accusations against her regarding her behavior issues through discovery of this suit on Dec[.] 23, 2013. . . .").

### 2.     Collateral Estoppel

Even if the § 1983 claim were not time-barred, it would be barred by collateral estoppel. Defendants argue that collateral estoppel bars Plaintiff's § 1983 claim because of Plaintiff's previous case in this Court. Previous court orders can preclude individuals from re-litigating issues or claims already decided.[27] Even if the issue is raised in a different cause of action or claim, collateral estoppel prevents re-litigating the same issue between parties.[28] Collateral estoppel applies when:

> (1) the issue decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[29]

Here, all four elements required for collateral estoppel are met. Plaintiff's previous lawsuit in 2012 required adjudication of a § 1983 claim alleging a violation of due process based on a liberty interest in her name and reputation which she was allegedly deprived of during her dismissal from KSU. During the course of her first case, Plaintiff raised the issue of the alleged May 2, 2012 incident and CIRT investigation in summary judgment proceedings. In granting summary judgment, this Court determined Plaintiff was dismissed for academic reasons, not disciplinary reasons caused by the alleged incident. Thus, the issue of whether Defendants' statements regarding this alleged incident deprived Plaintiff of her liberty interest in her name and reputation has already been litigated and adjudicated on the merits.[30] Furthermore, Plaintiff does not allege that she was not given the full and fair opportunity to litigate these issues in the

---

[27]*Allen v. McCurry*, 449 U.S. 90, 94 (1980).

[28]*Dale v. Bank of Am., N.A.*, No. 16-1081-EFM-KGG, 2016 WL 4245493, at * 2 (D. Kan. Aug. 11, 2016) (citation omitted).

[29]*B-Steel of Kan., Inc. v. Texas Indus., Inc.*, 439 F.3d 653, 662 (10th Cir. 2006) (citation omitted).

[30]*Solien v. Physicians Bus. Network, Inc.*, 22 F. Supp. 2d 1237, 1239 (D. Kan. 1998) ("It is well settled that summary judgment is a final judgment on the merits . . . .") (citations omitted).

previous lawsuit. In the alternative to being time-barred, this Court dismisses Count I for collateral estoppel preventing re-litigation of the issue surrounding the impact of the alleged May 2, 2012 incident and CIRT investigation.

### B.     Count II—Defamation

Plaintiff's state law defamation claim, premised on diversity jurisdiction, is barred by Kansas's statute of limitations. "A federal court sitting in diversity must apply the law of the forum state . . . and thus must ascertain and apply [the forum state's] law with the objective that the result obtained in federal court should be the result that would be reached in [the forum state's] court."[31] The federal court "must apply the most recent statement of state law by the state's highest court."[32]

In Kansas, the statute of limitations that applies to a defamation claim is the one-year statute of limitations period proscribed by K.S.A. 60-514(a).[33] The one-year statute of limitations accrues once the alleged defamation is published or spoken.[34] It is irrelevant for the accrual of the statute of limitations when the person allegedly defamed actually learned of the occurrence.[35] Thus, under Kansas law, any action for defamation pled one year after the alleged defamation is published or spoken is time-barred.[36]

Plaintiff's claim of defamation accrued one year after the defamation was published or spoken. Plaintiff argues Defendant Reed defamed her by intentionally and knowingly making

---

[31] *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994) (citations omitted).

[32] *Id.* at 513.

[33] *See, e.g.*, *Tilley v. Glob. Payments, Inc.*, 603 F. Supp. 2d 1314, 1330 (D. Kan. 2009); *Sports Unlimited, Inc. v. Lankford Enters.*, 275 F.3d 996, 1000 (10th Cir. 2002).

[34] *Tilley*, 603 F. Supp. 2d at 1330 (citing *Geolas v. Boy Scouts of Am.*, 23 F. Supp. 2d 1254, 1258 (D. Kan. 1998)).

[35] *Geolas*, 23 F. Supp. 2d at 1258 (noting the immateriality of when plaintiff contended to have learned of the alleged defamation in regards to the accrual of the statute of limitations).

[36] *See Tilley*, 603 F. Supp. 2d at 1330 (citing *Geolas*, 23 F. Supp. 2d at 1258); *see also Meyer Land & Cattle Co. v. Lincoln Cty. Conservation Dist.*, 31 P.3d 970, 973–74 (Kan. Ct. App. 2001).

9

false statements regarding the alleged CIRT incident and Plaintiff's conduct. Specifically, she alleges Defendant Reed defamed her when she submitted her declaration to the Court in the previous case stating that Plaintiff was yelling and disruptive in the graduate office on May 2, 2012.[37] While Plaintiff alleges she learned of Defendant Reed's declaration on February 9, 2015, this declaration was published and delivered to her during her first action on February 6, 2015 through the Court's electronic filing system. Thus, under Kansas law, the declaration and alleged defamation occurred and was published on February 6, 2015. Plaintiff's claim became time-barred on February 6, 2016—two days prior to Plaintiff filing this suit on February 8, 2016.

Plaintiff also argues that Defendant Reed defamed her during a May 4, 2012 meeting regarding the alleged CIRT incident. As noted in her response to summary judgement in her prior case, Plaintiff learned of these statements when an email was produced in discovery.[38] These emails were filed with the court on December 20, 2013, and Plaintiff admitted to receiving them on December 23, 2013. At the earliest, a defamation claim on these statements accrued one year after Defendant Reed spoke these words—May 4, 2013. Alternatively, these emails were published when submitted to the court in the prior case, and Plaintiff's claim became time-barred one year after this submission—December 20, 2014. Using either date of accrual, Plaintiff's defamation claim is statutorily time-barred, and the Court dismisses Count II.

---

[37]Doc. 1-12.

[38]Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at ¶ 72, *Lee v. Shanklin*, (D. Kan. July 23, 2015) (No. 12-CV-2638-JAR-TJJ), 2015 WL 4496266.

### C.     Count III—Intentional Infliction of Emotional Distress Claim.

Plaintiff fails to allege facts sufficient to state a claim of intentional infliction of emotional distress under Federal Rule of Civil Procedure 12(b)(6).  Rule 12(b)(6) provides a vehicle for a party to challenge the legal sufficiency of a claim.  The requirements underlying the legal sufficiency of a claim stem from Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."[39]

To survive a motion to dismiss for failure to state a claim, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[40]  "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[41]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[42]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[43]  Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[44]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but]

---

[39]Fed. R. Civ. P. 8(a).

[40]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[41]*Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[42]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[43]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[44]*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[45] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[46] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[47] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[48]

Because Plaintiff is a *pro se* litigant, the court must construe her pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[49] However, the court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."[50] The court need only accept as true the plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[51]

If the court, on a Rule 12(b)(6) motion, looks to matters that were not attached to the complaint or incorporated into the complaint by reference, it generally must convert the motion to a Rule 56 motion for summary judgment.[52] However, the court may consider documents which are referred to in the complaint if they are central to the plaintiff's claim and the parties do not dispute their authenticity.[53] The Court considered all exhibits attached to the Complaint.

---

[45]*Id.*

[46]*Id.* at 679.

[47]*Id.*

[48]*Id.* at 678.

[49]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[50]*Id.*

[51]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

[52]Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384–85 (10th Cir. 1997).

[53]*See Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007); *GFF Corp.*, 130 F.3d at 1384–85.

The court may also take judicial notice of certain facts without converting a motion to dismiss into one for summary judgment.[54] As discussed above, the Court takes judicial notice of Plaintiff's prior proceedings before this Court.

Plaintiff premises her common law intentional infliction of emotional distress claim on diversity jurisdiction. "A federal court sitting in diversity must apply the law of the forum state . . . and thus must ascertain and apply [the forum state's] law with the objective that the result obtained in federal court should be the result that would be reached in [the forum state's] court."[55] The federal court "must apply the most recent statement of state law by the state's highest court."[56]

Plaintiff argues she has suffered extreme emotional distress as a result of Defendants' intentional conduct. In Kansas, intentional infliction of emotional distress comprises four elements:

> (1) the challenged conduct was intentional or performed with reckless disregard for plaintiff; (2) the conduct was extreme and outrageous; (3) a causal connection exists between the conduct and the plaintiff's mental distress; (4) the plaintiff's mental distress was extreme and severe. . . . Conduct is extreme and outrageous when it goes beyond the bounds of decency and is utterly intolerable in a civilized society.[57]

Defendants argue that the conduct of university officials was not extreme or outrageous and that the Complaint fails to plead facts sufficient to demonstrate the severe emotional distress required by the tort.

---

[54]*See, e.g.*, *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004).

[55]*Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994).

[56]*Id.* at 513.

[57]*S. Star Cent. Gas Pipeline, Inc. v. Cline*, 754 F. Supp. 2d 1257, 1263–64 (D. Kan. 2010) (quotations omitted).

The Court finds that Defendants' conduct was not extreme or outrageous enough to support a claim of intentional infliction of emotional distress. To be extreme and outrageous, conduct "must be outrageous the point it goes beyond the bounds of decency and is utterly intolerable in a civilized society."[58] Harsh language and occasional inconsiderate acts do not constitute outrageous behavior.[59] Plaintiff's allegations show that Defendants' actions primarily occurred in the course of disciplining Plaintiff and removing her from the graduate program. While Plaintiff did not desire dismissal from the program, nothing suggests this procedure of removal from the program reached the level of being intolerable by society. Defendant Reed's declaration submitted in the previous case,[60] and her and Defendant Bosco's delayed response to Plaintiff's request for information regarding the CIRT, are also typical and tolerable occurrences in a civilized society.

Moreover, Plaintiff's allegations do not support a finding that she suffered extreme and severe mental distress. While there is "no laundry list of what qualifies as the requisite level of severity [of emotional distress] . . . . headaches, sleeplessness, irritability, anxiety, depression . . . and the like would probably not suffice. . . ."[61] Plaintiff's complaint states she has "suffered extreme emotional distress, embarrassment, shame, humiliation and severe depression" and that "no reasonable person should be expected to endure it."[62] These blanket statements reflect legal conclusions that Plaintiff has suffered distress and do not permit inferences to be drawn that these were so severe no one should have to endure them. Thus, even construed favorably to Plaintiff, Plaintiff's failure to allege additional facts makes these statements insufficient to

---

[58] *Roberts v. Saylor*, 637 P.2d 1175, 1179 (Kan. 1981).

[59] *Id.*

[60] Doc. 1-12 at ¶7.

[61] *Dana v. Heartland Mgmt. Co.*, 301 P.3d 772, 781 (Kan. Ct. App. 2013) (citations omitted).

[62] Doc. 1 at ¶ 53.

support a claim of intentional infliction of emotional distress.  For the foregoing reasons, the Court grants Defendants' motion to dismiss with respect to Count III.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 15) is **granted**.

**IT IS SO ORDERED.**

Dated: November 22, 2016

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
